367 So.2d 635 (1979)
Lawrence Allen ADAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 78-652.
District Court of Appeal of Florida, Second District.
January 19, 1979.
Rehearing Denied February 23, 1979.
*636 Jack O. Johnson, Public Defender, and Paul C. Helm and David Boone, Asst. Public Defenders, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
DANAHY, Judge.
Appellant was convicted of possessing dynamite, an explosive, without a valid license or permit. He received a sentence of three years imprisonment. The dynamite in question was destroyed by law enforcement officers during the investigation of the case and, therefore, could not be and was not produced at appellant's trial. Appellant's motion for production of the dynamite was denied. The failure or inability of the state to produce the dynamite forms the basis of appellant's primary attack on this appeal. For reasons which we will express in this opinion, we reject appellant's arguments and affirm his conviction.
Before dealing with the issues concerning the destruction of the dynamite, however, we will first dispose of a preliminary point raised by appellant. Appellant contends that the state had the burden of proving that he did not hold a license or permit for possession of the dynamite and failed to introduce competent evidence of that fact. Therefore, appellant argues, the trial judge erred in denying appellant's motion for judgment of acquittal at the close of the state's case.
*637 Appellant bases his point on the statute defining the crime, which is Section 552.101, Florida Statutes (1977), reading as follows:
It is unlawful for any person to possess an explosive unless he is the holder of a current, valid license or permit, as above provided, and possesses such explosive for the purpose covered by the license or permit he holds... .
Appellant's argument is that the state has the burden of proving each essential element of a crime and that where the legislative definition of the crime makes the illegality of possession depend on the absence of a permit, absence of the permit is an essential element of the crime and proof thereof must be included in the state's case. The state, on the other hand, argues that the absence of a permit to possess an explosive is an exception carved out by Section 552.101 and, an exception being a defensive matter, the state did not have the burden of alleging or proving the absence of the exception in this case.
The state did make an effort to prove that appellant held no valid permit to possess an explosive, but we agree with appellant that the evidence tendered by the state was clearly insufficient for that purpose. Furthermore, in an appropriate case, we might be inclined to accept appellant's proposition that the state had the burden of proof on this issue. In analogous cases involving the possession of a firearm without a license, older cases reason that the burden falls on the defendant to establish that he holds a license. That reasoning is based on the theory that the state should not be required to prove a negative and that it is appropriate to place upon a defendant the burden of proving a fact which is peculiarly within his knowledge. However, more recent decisions, beginning with Commonwealth v. McNeil, 461 Pa. 709, 337 A.2d 840 (Pa. 1975), have reached the opposite conclusion on the basis that the burden of proving an essential element of a crime may not constitutionally be shifted to a defendant. Cases reaching these various conclusions in the firearm situation are collected in the annotation at 69 A.L.R.3d 1054 (1976).
But in the case at bar we are not required to decide the issue of who had the burden of proving the absence of a license or permit. After appellant moved for judgment of acquittal at the close of the state's case and received an adverse ruling on that motion, he took the stand on his own behalf. On cross-examination he was asked whether he held a permit to possess an explosive and answered that he did not. It has been held in this state that where the prosecution fails to introduce evidence of an essential element of a crime, so that there is error in failing to grant a motion for directed verdict or judgment of acquittal, that error is not grounds for reversal where the defendant takes the stand and in his testimony supplies the missing element. Roberts v. State, 154 Fla. 36, 16 So.2d 435 (1944); Kozakoff v. State, 104 So.2d 59 (Fla.2d DCA 1958); Bullard v. State, 151 So.2d 343 (Fla. 1st DCA 1963). In the Bullard case, the court specifically rejected the contention that evidence presented after denial of a motion for directed verdict of acquittal cannot be considered on appeal in determining whether the denial of the motion was reversible error.[1]
We, therefore, reject appellant's preliminary point directed to the state's failure to introduce, during its case in chief, competent evidence of appellant's lack of a permit. Passing that issue, we turn to a consideration of the issues presented by the state's destruction of the dynamite. Appellant raises some serious questions and an explanation of the facts in this case is necessary to understand our conclusion that those questions should be resolved adversely to appellant. We will state those facts as revealed by the state's witnesses, since obviously *638 the jury believed those witnesses and rejected defendant's blanket denial.
Appellant was arrested and charged as the result of an investigation conducted by sheriff's deputies of Polk County and Highlands County in collaboration with a confidential informant, Otis Burdette. Burdette testified that appellant approached Burdette and asked where he could get rid of some dynamite. Burdette said that offhand he didn't know but he would check and see, and maybe he could handle some. Some time later Burdette was at a used car lot in Fort Meade in company with Bobby (Bear) Colvin when appellant approached Burdette and Colvin and asked whether Burdette wanted "that dynamite." Burdette said he did and appellant suggested that they go and get it.
Appellant got in his truck and proceeded to Old Bowling Green Road. Colvin and Burdette followed in Burdette's car. At a point on Old Bowling Green Road, Burdette parked his car while appellant proceeded on in his truck. After a space of about 20 minutes, appellant returned and handed Burdette through the window of his car three sticks of what Burdette referred to as dynamite. Burdette described these items as wet to the touch, with bubbles on them.
Burdette and Colvin then returned to the used car lot in Fort Meade. A few minutes later appellant pulled in and Burdette asked what he owed appellant. Appellant suggested they just call it even on a debt of $50 which appellant owed Burdette. The bargain was made.
During all of this time Burdette was wearing a transmitting device strapped to his body, which had been placed there by officers of the Highlands County Sheriff's Department. Two sheriff's deputies testified that they listened in on the conversations at the used car lot but were not close enough to the vehicles on Old Bowling Green Road to hear any conversation which took place there. These deputies said they could specifically identify the voices of Burdette, Colvin and appellant, and corroborated Burdette's account of the conversations at the used car lot.[2] Colvin also testified, and corroborated the story told by Burdette.
After the second conversation at the used car lot, Burdette met sheriff's deputies from Polk County and Highlands County at a pre-arranged spot on the Peace River. There he delivered to the officers the items which appellant had handed to Burdette on the Old Bowling Green Road. These officers described the items at appellant's trial and identified photographs of them, which were introduced in evidence. The testimony of one of these officers, Sgt. Nemeth, is crucial.
Sgt. Nemeth described the items in question as three sticks of dynamite which were old, soggy, not firm, with white crystallized material on them. He testified that he had received four weeks training at the Redstone Arsenal in Huntsville, Alabama, in the recognition, the care and handling, and the safe disposition of common explosives, particularly homemade bombs. He said that in his training there was emphasis on the recognition of explosive devices and that he had handled dynamite of different types and strengths.
Sgt. Nemeth further testified that the items delivered by Burdette were three sticks of dynamite bearing a label with the words "DuPont  high explosive  dynamite  rated at 60%. Sgt. Nemeth said he considered these items to be dangerous to handle or to store because there was an oily residue on them which he believed to be nitroglycerin. He said he had been instructed that any time he found dynamite in an old, deteriorated condition with an oily surface or "sweat beads" on it, he was to consider it to be nitroglycerin and to be highly dangerous and unstable. Further, he had been instructed that in such a case, the proper render-safe technique was detonation.
*639 After Burdette delivered the alleged dynamite to the officers at the location on the Peace River, and after each had visually examined the items and photographs were made, Sgt. Nemeth placed the three sticks in about three to four inches of water at the edge of the river and fired five rounds from an M1 carbine at the sticks from a distance of 30 to 40 feet. There was no explosion. The three sticks simply broke into pieces and began to dissolve and float out into the river. No part of the material was recovered. Thus there was no chemical analysis of the material and no evidence as to its nature other than the testimony which we have summarized above.
Appellant first argues that without introduction in evidence of the alleged dynamite, or a chemical analysis of the material demonstrating that it was dynamite, the state's case was fatally defective since the critical issue was whether the items possessed by appellant were in fact dynamite.
This first argument of appellant fails in the face of the fundamental rule, said by our supreme court to be too well settled to require citation of authorities, that any material fact in a criminal case may be proved by circumstantial evidence, as well as by direct evidence. Moorman v. State, 157 Fla. 267, 25 So.2d 563 (1946). Clearly, the nature of a substance alleged to be illegally possessed may be demonstrated by circumstantial evidence. See, for example, United States v. Lawson, 507 F.2d 433 (7th Cir.1974).
Alternatively, appellant argues that the circumstantial evidence in this case as to the nature of the material alleged to be dynamite was insufficient. He points to the fact that neither Sgt. Nemeth nor any other officer who testified was qualified as in expert in the identification of dynamite. Further, appellant points out, Sgt. Nemeth testified that firing rifle shells into dynamite was a regularly accepted method of detonation known as the "impact method," and that he had used the impact method before on other suspected dynamite and the substance had exploded. Appellant says that, therefore, the circumstantial evidence in this case was contradictory and could not exclude all reasonable hypotheses of innocence. Contradictory circumstantial evidence, says appellant, cannot be relied upon to prove an essential element of a criminal offense.
But we have only appellant's argument on this appeal as standing for the proposition that the evidence in this case was contradictory. Appellant offered no evidence at trial to show that dynamite always explodes when hit by shells from a high powered rifle. The state says that the dynamite did not explode because it was old. Again, there was no proof of this fact at trial. So we regard the lack of an explosion as unexplained either way and simply not probative in this case. The jury had no way of assessing its significance and neither do we.
On the whole, we view the circumstantial evidence as sufficient to establish that the material in question was in fact dynamite. It was described as dynamite by all who saw it, including one witness who had received training in the recognition of dynamite. Burdette and Colvin both testified that appellant spoke to Burdette about selling "dynamite." Burdette paid appellant a sum of money for what appellant had represented to be dynamite. The three sticks bore a label reading "dynamite." We think this evidence was sufficient.
The last argument made by appellant is the most troublesome. Appellant says that the inability of the state to produce the dynamite for analysis by an expert on behalf of appellant constitutes a denial of due process of law and, therefore, appellant's conviction cannot stand.
Whenever the state is unable to produce physical evidence which has been in the possession of the state, a serious constitutional issue is presented. It is clear, however, that the state's failure to produce such evidence does not call for an automatic reversal of a conviction. State v. Sobel, 363 So.2d 324 (Fla. 1978). The supreme court in the Sobel case approved a balancing approach suggested by United States v. *640 Bryant, 145 U.S.App.D.C. 259, 448 F.2d 1182 (1971) and its progeny. Under that approach, where evidence is lost or destroyed while in the possession of the state, the impact of the omission must be evaluated in the context of the entire record. A court must examine the circumstances of the loss or destruction to determine whether there has been a violation of the duty of the state to preserve evidence, a duty which clearly arises during the investigatory phase of a case. Whether there has been such a violation, and whether it was flagrant or in total disregard of the rights of the accused, is the first line of inquiry.
But the analysis does not end there. In a case where the destruction of the evidence was a flagrant and deliberate act done in bad faith with the intention of prejudicing the defense, that alone would be sufficient to vitiate a conviction. But where the circumstances amount to less than this, a conviction should not be overturned unless it can be concluded from a review of the record that the defendant's case was in fact prejudiced by the omission of the nonpreserved evidence. Government of the Virgin Islands v. Testamark, 570 F.2d 1162 (3d Cir.1978).
We are reluctant to describe the actions of Sgt. Nemeth in destroying the alleged dynamite as a violation of the state's duty to preserve material evidence. As explained by him, his actions were taken in good faith, in the belief that he should promptly employ the render-safe technique which he had been trained to use. Appellant offered no evidence whatsoever attacking the adequacy of Sgt. Nemeth's training or the reasonableness of his conclusions. Although appellant argues to this court that a portion of the alleged dynamite could safely have been preserved for chemical analysis, he offered no evidence at trial in support of that proposition.
Nothing we say here, however, should be interpreted as condoning the deliberate destruction of material evidence by law enforcement officers. Such action, in our view, could rarely be justified. We say no more than that in this particular case, under the circumstances here presented and in the light of the uncontradicted and unimpeached testimony of Sgt. Nemeth, the destruction of the alleged dynamite does not alone call for reversal of appellant's conviction on due process grounds. Therefore, we must determine whether appellant's case was thereby so prejudiced that this conviction cannot stand.
Our supreme court has approved the proposition that the standard of prejudice which must be met by a defendant in order to obtain a new trial varies inversely with the degree to which the conduct of the trial has violated fundamental notions of fairness. Thus more deliberate or flagrant conduct by the state in suppressing evidence requires less of a showing of prejudice to the defendant, while more excusable conduct on the part of the state calls for a showing of greater prejudice to a defendant before relief will be granted. Salvatore v. State, 366 So.2d 745 (Fla. 1978).
Under that variable standard, we believe appellant in this case is required to make a clear demonstration of prejudice. This he has not done. We have already concluded that the circumstantial evidence as to the nature of the alleged dynamite was sufficient to support the jury's verdict. Appellant can only say that he has been prejudiced because he was unable to have the material in question subjected to chemical analysis which might demonstrate that the substance was not in fact dynamite. If this were a close case, we might seriously entertain that argument. Where the nature of a substance determines whether its possession is illegal, the right of a defendant to have that substance subjected to chemical analysis cannot be lightly regarded. State v. Herrera, 365 So.2d 399 (Fla.3d DCA 1978).
But here the jury believed testimony that appellant sold Burdette items which appellant represented to be dynamite and for which he was paid. Appellant did not offer a story that he deliberately defrauded Burdette by selling him fake dynamite. He simply denied that the transaction took place and said that he had never in his life been in possession of dynamite. The jury *641 did not believe him, which was its prerogative. Appellant has failed to convince us that there was a substantial doubt in this case as to whether the items in his possession were in fact dynamite. The fact that the items did not explode when Sgt. Nemeth fired bullets into them did not create such a doubt in the absence of any evidence presented by appellant that the material, if dynamite, would indeed have exploded.
For these reasons, we decline to overturn appellant's conviction.
Affirmed.
SCHEB, Acting C.J., and OTT, J., concur.
NOTES
[1] For almost forty years Florida has had a statute or a rule specifically providing that a motion for directed verdict or judgment of acquittal is not waived by subsequent introduction of evidence on behalf of the defendant. Fla.R.Crim.P. 3.380, former Rule 1.660[3.660], Sec. 918.08, Florida Statutes (1967) and its predecessors. That provision implies a result contrary to the decisions in the cases cited above, but is not mentioned in any of them.
[2] A tape recording of these conversations was made and presumably was available to the defense.