From a conviction for the offense of trafficking in marijuana, in violation of § 20-2-80, Code of Alabama (1975), this appeal follows. For the reasons outlined below, the judgment of conviction is affirmed.
The State's evidence tended to prove that on December 15, 1981, an undercover agent with the United Narcotics Detail Operation, Jefferson County Sheriffs Department, went to 2312 Holbrook Terrace in Bessemer, Alabama, to purchase three pounds of marijuana. The undercover agent was assisted by an informant who told him that the appellant (also known as "Fat Sam") would be there. When they arrived at the apartment, the appellant met them at the door and invited them inside. Also at the apartment was a woman by the name of Virginia Glover. After a brief conversation, the appellant instructed Glover to "go get the stuff." Glover went to another part of the apartment and returned a few seconds later with a brown grocery sack. Glover then removed three plastic bags from the sack. In the appellant's presence, the undercover agent set up scales on the kitchen table and weighed the three plastic bags. According to the agent, the plastic bags contained marijuana. After weighing the contents, the undercover agent purchased approximately 1,275 grams (three pounds) of marijuana for $1,215 in cash. The appellant put the cash in his pocket and told the agent that if he "needed any more, to get back with him [the appellant]."
As a result of the "buy," the appellant, as well as others, was arrested. After a trial by jury, the appellant was convicted of the offense of trafficking in marijuana, in violation of § 20-2-80, Code of Alabama (1975). Appellant was sentenced to ten years in the State penitentiary and fined $25,000.00. On appeal, these three issues are raised: (1) whether there was a fatal variance between the language of the indictment and the proof presented by the State; (2) whether §20-2-80, Code of Alabama (1975), is unconstitutional because it fails to set out a maximum sentence; and (3) whether the State's destruction of evidence prior to trial constituted a denial of appellant's due process of law.
 I
The first issue, according to the appellant, relates to a "fatal variance" between the nature of the offense, as charged in the indictment, and the proof presented by the State at trial. The appellant asserts that the indictment charged him with "actual possession" when the State merely proved constructive possession" of the marijuana. The actual language of the indictment, however, expressly charged the appellant with the offense of "possession" and did not specify whether the possession was actual or constructive.[1]
From a review of the record, it is apparent that no objection was made at the trial court level. In fact, the only "adverse ruling" in the record on appeal is an objection to the trial court's instructions to the *Page 1176 
jury.[2] Appellant did not file a motion to exclude the State's evidence; a motion for judgment of acquittal; or a motion for a new trial. As a general rule, absent an adverse ruling, there is nothing for this court to consider on appeal.
Additionally, even assuming that the issue was properly preserved, this question has been previously decided adversely to the appellant. In Morrison v. State, 455 So.2d 240
(Ala.Cr.App. 1984), this court, per Judge Taylor, concluded that "it should not be necessary in the indictment to detail whether the possession expected to be proved is actual or constructive or both." Id., at 243. Here, as in Morrison, the appellant was sufficiently apprised of the offense for which he was charged, and the proof was consistent with the language of the indictment. Thus, under the authority of Morrison, supra, this issue is decided adversely to the appellant.
 II
The second issue questions the constitutionality of §20-2-80, Code of Alabama (1975). Appellant argues that this statute is unconstitutional because it fails to provide a "maximum sentence of punishment". Although the appellant recognizes this court's decision in Dickerson v. State,414 So.2d 998 (Ala.Cr.App. 1982), he, nonetheless, argues that the statutory sentencing scheme constitutes an improper violation of the doctrine of separation of powers under the Alabama Constitution. This court, however, expressly held in Dickerson
that "§ 20-2-80 (1) [is] not unconstitutionally vague or indefinite as to its sentencing scheme or violative of the separation of powers doctrine of § 43 [Article III, AlabamaConstitution]." Id. at 1005. Subsequent decisions from this court have reached the same conclusion. Wallace v. State,437 So.2d 648, 650 (Ala.Cr.App. 1983); Robinson v. State,428 So.2d 148, 152 (Ala.Cr.App. 1982), cert. denied, 462 U.S. 1137,103 S.Ct. 3122, 77 L.Ed.2d 1374 (1983). Additionally, recent cases from the Alabama Supreme Court have decided this issue adversely to the appellant. Robinson v. State, 474 So.2d 685
(Ala. 1985); Campbell v. State, 479 So.2d 1299 (Ala. 1985). Thus, appellant's second contention is without merit.
 III
The third issue raised by the appellant concerns the destruction of the evidence prior to trial. After the controlled "buy," the marijuana which was purchased from the appellant was placed in an evidence locker. On January 6, 1984, the marijuana was weighed, tested, analyzed, and then returned to the evidence locker. At trial, Mary Rhodes Holt, analytical chemist in charge of drug identification, Alabama Department of Forensic Sciences, Birmingham division, testified that the marijuana subsequently became infested with mice. According to Ms. Holt, the mice "like to make beds in the marijuana. They shred the paper bags and the plastic bags." Ms. Holt went on to testify as follows:
 "We had a large infestation of mice at the laboratory in the storage locker where we keep all the evidence from all the agencies that bring in stuff to the laboratory. And it was to the point that it was beginning to be a health hazard.
 "And we were asked by the Jefferson County Department of Public Health, that something had to be done. They couldn't tell us to destroy it, because it was evidence pertaining to court. But, all the evidence —
 "[DEFENSE COUNSEL]: Judge, we object to this rambling explanation.
"THE COURT: Overruled.
"[DEFENSE COUNSEL]: We except.
 "And any of the evidence that had been brought to the laboratory that was no longer intact, where you could absolutely state the evidence that was remaining *Page 1177 
was what was in the case, any evidence of that type was destroyed."
Appellant argues that he was denied due process of law as a result of the destruction of the marijuana.
As this court, per Judge Taylor, has noted, it would be "foolish practice to destroy evidence before a trial in the ordinary situation." Morrison v. State, supra, 455 So.2d at 242. In Morrison, the appellant was convicted of the offense of trafficking in cannabis and argued on appeal that the burning of all but 18.1 grams of the 467 pounds of contraband constituted reversible error. This court concluded that the error committed, if any, was "without injury" because of the "strong and persuasive inference" that all of the material was marijuana and "not merely stalks and sterilized seeds." Id. In the present case, as in Morrison, there was overwhelming evidence presented by the State which tended to show that the confiscated material was marijuana. This is especially true because the appellant (as well as Virginia Glover) testified that the "big brown bag" contained "reefer" or marijuana.[3]
In an analogous case, the Fifth Circuit Court of Appeals upheld a conviction for certain offenses related to the production of "moonshine" liquor even though the tested sample of "mash" was destroyed prior to trial.[4] United States v.Herndon, 536 F.2d 1027 (5th Cir. 1976). The court in Herndon
initially noted that the appellant had not been deprived of his constitutional right to confront witnesses as a result of the destruction of the sample because the Sixth Amendment is "by its terms restricted to `witnesses' and does not encompass physical evidence as well." Id. at 1029. The Fifth Circuit Court of Appeals determined, however, that the appellant did have a proper claim under the due process clause of the Fifth Amendment based on the following rationale:
 "As a matter of the fundamental fairness which that provision guarantees appellant, he is entitled to access to relevant and material evidence which is necessary for him to prepare his defense. [Citations omitted.] Whether a defendant has been deprived of this right of due process will depend upon the materiality of the evidence, the likelihood of mistaken interpretation of it by government witnesses or the jury, and the reasons for its nonavailability to the defense." Id.
The court then concluded that Herndon had been given a "fundamentally fair trial" because: (1) there was a "uniform belief' on the part of all the parties that the stills were producing "alcoholic spirits"; (2) there was no claim that an "improper governmental motive" was involved; and (3) Herndon's demand was "untimely." In reaching the conclusion that the demand was "untimely," the court, inter alia, stated as follows:
 "Appellant made no effort prior to trial to gain access to the notes or to obtain the mash sample in order to have his own analysis of it made. . . . [A]ppellant's first demand for the physical evidence [was] made in the middle of trial, ten months after his indictment. Such a demand clearly was untimely and alone justified denial of his claim." Id.
Here, as in Herndon, appellant's demand on the date of trial was untimely. Additionally, using the Herndon analysis, the appellant was given a "fair trial" because: (1) there was a "uniform belief" among the parties that the evidence was, in fact, marijuana; and (2) there is no claim that an *Page 1178 
"improper governmental motive" was involved.
When the "governmental motive" issue has been considered in cases involving the destruction of evidence, decisions from the Florida appellate courts indicate that the possibility of "bad faith" on the part of the State should be considered. Adams v.State, 367 So.2d 635, (Fla.Dist.Ct.App.), cert. denied,376 So.2d 68 (Fla. 1979). In Adams, the appellant was convicted of the offense of "possessing dynamite without valid license or permit." Adams's conviction was upheld on appeal even though the dynamite was destroyed prior to trial as a "render-safe" technique employed by the State. The Florida court in Adams
concluded that the "first line of inquiry" should be whether the State's violation of its duty to preserve evidence was "flagrant or in total disregard of the rights of the accused."Id., 367 So.2d at 640. The following analysis of the issue was used by the Florida court:
 "In a case where the destruction of evidence was a flagrant and deliberate act done in bad faith with the intention of prejudicing the defense, that alone would be sufficient to vitiate a conviction. But where the circumstances amount to less than this, a conviction should not be overturned unless it can be concluded from a review of the record that the defendant's case was in fact prejudiced by the omission of the nonpreserved evidence. [Citations omitted.]" Id.
Under this analysis, the Florida court concluded that Adams was not entitled to a new trial because there was no "bad faith" on the part of the State and, additionally, there was no showing that the appellant's case had been "prejudiced by the omission of the nonpreserved evidence." Id., cited in Strahorn v. State,436 So.2d 447, 449 (Fla.Dist.Ct.App. 1983).[5]
In another Florida case, the appellate court concluded that the trial court improperly granted a defense motion to suppress. State v. James, 404 So.2d 1181 (Fla.Dist.Ct.App. 1981). In James, the sheriff's department destroyed marijuana prior to trial as "part of its routine procedure for destroying contraband in older cases." Id, After deciding that there was no evidence of "bad faith" on the part of the State, the Florida court concluded that there was no prejudice to the appellant as a result, based upon the following analysis:
 "Here, defense counsel also had the opportunity, prior to the initial trial date, to test the alleged contraband and failed to do so. Instead, he chose to cross-examine the state's chemist concerning his analysis. Moreover, the defendant by his escape delayed the trial for two years by which time the sheriff's department, as part of its routine procedure, had destroyed evidence. It was only after the case had been reset for trial and defense counsel knew of the destruction of the contraband that he requested production of that evidence. While mere delay of a trial would not ordinarily excuse the destruction of crucial evidence, the fact the defense counsel had ample opportunity to test the contraband, combined with the delay unlawfully caused by the defendant, demonstrates that the defendant was not prejudiced by the destruction of the evidence." Id.
at 1182.
Of course, the appellant in James participated in the delay of the trial by virtue of his escape. Procedurally, however, there are several similarities between the present case and James
which support a conclusion that the appellant was not prejudiced as a result of the destruction of the evidence.
In the present case, more than a year passed between the time that the motion was filed and the date that the marijuana *Page 1179 
was destroyed. During this year's delay, five continuances of the trial date were obtained but the appellant made no effort to inspect or examine the evidence.[6] Of course, there is no allegation and certainly no proof that the State intentionally delayed the trial of the case. Certainly, it could not be said that the State, in order to justify a destruction of the evidence, deliberately delayed the trial of the case until the evidence became a health hazard.
In a factually similar case, this court, per the Honorable Joseph J. Mullins, Retired Circuit Judge, concluded that the trial court had not abused its discretion when, on the day of trial, it denied the defense counsel's motion to produce and suppress. Wilson v. State, 395 So.2d 1116, 1118 (Ala.Cr.App. 1981). In reaching this conclusion, the court stated the following:
 "The motion to produce, and the motion to suppress were filed with the clerk of the Circuit Court on May 15, 1979, and a copy of each sent to the District and Assistant District Attorney for Chambers County. The motions were not called to the attention of the trial court, nor was an order setting them down for a hearing requested by counsel for the appellant until after the case was called for trial on May 29, 1980. Among the reasons for pre-trial motions to produce, or to suppress, are to avoid delay and undue, interruption during the trial. They should be disposed of before the trial date. We hold that the trial court did not abuse its discretion when it denied appellant's written motions to produce and suppress. [Citations omitted.]" Id. (Emphasis added.)
The only "adverse ruling" in this case, however, came on the day of trial when defense counsel moved to exclude the testimony of Ms. Holt based upon the following grounds:
 "[Defense counsel] Judge, we would object, because to destroy evidence in a case pending in court, it would be highly improper, depriving the defendant of the opportunity to be confronted by witnesses and by the evidence against him. And it was destroyed without any knowledge of the defendant. And we would not only move to exclude — we would move to exclude on that ground, exclude all of Miss Holt's testimony pertaining to any — these exhibits, and anything brought to her for examination or evaluation.
"THE COURT: I overrule."
In the present case, as in Wilson, there was no error when the trial court overruled the defense motion on the day of trial.
In a supplemental letter brief, the appellant has directed this court's attention to the recent case of Ware v. State,472 So.2d 447 (Ala.Cr.App. 1985). In Ware, the appellant's conviction for the offense of selling marijuana was reversed due to the trial court's "failure to permit examination of the controlled substance in accordance with A.R.Crim.P.Temp. 18.01 (c)." Id. at 449. In reaching this conclusion, this court quoted from Warren v. State, 292 Ala. 71, 75, 288 So.2d 826,830 (1973), as follows:
 "`We think that to deny him this right is to deny him due process, especially where his motion to produce was made well in advance of the trial so that it could have been ruled on by the court without causing any undue delay in the trial.'" Id.
The decision in Ware, however, was based upon the trial court's failure to grant the appellant's specific pre-trial motion or "request to submit the alleged marijuana to an independent laboratory." Id. at 448. In the present case, no such request was made.
Although a document styled "motion for discovery" was filed on January 19, 1983, *Page 1180 
the appellant did not obtain a ruling on this motion from the trial court.[7] As this court has repeatedly and consistently stated, "review on appeal is limited to matters on which rulings are invoked at the trial level." Robinson v. State,441 So.2d 1045, 1048 (Ala.Cr.App. 1983). See also: Moore v. State,457 So.2d 981, 988 (Ala.Cr.App. 1984), cert. denied, Moore v.Alabama, ___ U.S. ___, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985). Since it is apparent that there was no error at the trial court level, this third issue is also decided adversely to the appellant.
AFFIRMED.
All the Judges concur.
[1] In pertinent part, the indictment reads as follows:
 ". . . Samuel Lee Jackson, alias, `Fat Sam', . . . did on, to-wit: December 15, 1981, while at or near 2312 Holbrook Terrace, Bessemer, Jefferson County, Alabama, possess in excess of 2.2 pounds of marijuana. . . ."
[2] The only objection in the record concerns the court's instructions to the jury to the effect that the term "possession" includes "actual possession" as well as "constructive possession." This charge was, of course, entirely proper. Morrison v. State, 455 So.2d 240, 243 (Ala.Cr.App. 1984).
[3] At trial, the appellant testified in his own behalf and admitted that he was present at the time the controlled "buy" took place. Appellant denied, however, that he participated in the exchange and denied that he ever touched or had possession of the marijuana. Appellant did admit, under cross-examination, that he had two prior convictions for the offense of "sale of cocaine."
[4] After certain lab tests were performed, the "mash" sample was destroyed as part of "routine lab procedure." This procedure required the removal of all evidence in the lab after a period of six months, due to space limitations.
[5] Note that at least one Florida appellate court case indicates that some "notice" to the accused would be appropriate prior to the destruction of evidence in drug-related cases. Stipp v.State, 371 So.2d 712 (Fla.Dist.Ct.App. 1979), cert. denied,383 So.2d 1203 (Fla. 1980). In what would appear to be dictum, the Florida court stated:
"Additionally, if the state has a suspected illegal drug or other evidentiary item it expects to destroy by testing then the better rule is to notify the accused and allow him to have some minimal participation in the testing process." Id., 371 So.2d at 714.
[6] The initial trial date was October 4, 1982, but the matter was reset on the motion of the defendant. The case was again continued on January 28, 1983; April 18, 1983; August 29, 1983; October 20, 1983; and January 9, 1984. On January 6, 1984, the evidence was tested by the State Toxicologist and destroyed on March 12, 1984, after a rodent infestation was discovered. The case was continued on April 16, 1984, and May 15, 1984, and finally came to trial on August 17, 1984.
[7] Also note that the "discovery motion" did not request that the defendant be allowed to examine or inspect the contraband. The motion merely requested that certain documents be produced. Appellant, however, argues that the discovery motion's request for a "detailed description of all physical items and their exact location and name of custodian" would be sufficient. Even assuming that this language constitutes a request to produce the contraband, it is apparent that the trial court was not made aware of the motion and a ruling on the motion was not invoked from the trial court.