The appellant, Willie Ralph Gaston, was convicted of the murder of Diane Bell, a violation of § 13A-6-2, Code of Alabama 1975. He was sentenced to life in prison without the possibility of parole.
The state's evidence tended to show that on the evening of December 30, 1989, *Page 549 
James Nixon discovered the body of the victim, Diane Bell, near the Anniston Army Depot near Lincoln, Alabama. Around 4:40 on the afternoon of December 30, 1989, Mr. Nixon, a game warden employed by the depot, heard a shot and about a minute later heard two more shots. He went to investigate and discovered a woman's body in the middle of the road. Mr. Nixon had driven past that same area approximately 20 minutes earlier and had not seen a body. He then called the Talladega Police Department.
The victim had been shot twice; one shot entered the right side of her face and lodged in her sinuses and the other shot entered her right upper leg. The victim also had 24 lacerations, which were the result of extensive blows on her face and head. Alcohol was present in the victim's blood. Cocaine was also found in her system, after a urinalysis was done. Kenneth Warner, of the State Department of Forensic Sciences, testified that either the shot to the head or the extensive blows, would have been sufficient to cause her death. He stated at trial that he felt her death was caused by these injuries since they were all inflicted prior to her death. Mr. Warner also stated that the hairs taken from the victim were consistent with hairs found on a gun owned by the appellant.
The same day, approximately one hour after the body was found, a burning car was discovered about 18 miles from where the body had been found. Several officers who arrived at the scene stated that they smelled gasoline. Blood was found on the passenger side of the car and on the rear bumper. A bloody rag was also found next to the car. Officer Bush stated that a woman at the scene told them the owner of the car was her brother-in-law, the appellant. Three officers went to the home of the appellant, which was approximately one block from the car. A woman who identified herself as the appellant's wife answered the door and told them that her husband was in the bedroom. The appellant told them to come into the room. The appellant eventually came to the door of the room and he was read his Miranda rights. The appellant was taken to the police station and arrested on the charge of failing to register as an ex-felon who had committed a sex crime. One of the officers observed blood on the appellant's arm. Fibers found under the appellant's fingernails matched those taken from the body of the victim.
DNA testimony was admitted to match the blood on the bumper and on the rag found by the car, to the victim. An expert witness, Ms. Vining, of Lifecodes Laboratories, testified that the blood found on the bumper and rag, was subjected to many technical tests dealing with DNA matching and, was found to be the blood of the victim. The appellant raises four issues on appeal.
 I
The appellant initially argues that the prosecution violated the rule of Batson[1] in striking prospective black jurors from the venire. The appellant argues that the prosecution failed to provide race-neutral reasons for its strikes. After a review, we conclude that the prosecution's reasons for the strikes were race-neutral.
"An appellate court may reverse the trial court's determination that the prosecutor's peremptory challenges were not motivated by intentional discrimination only if that determination is " 'clearly erroneous.' " Mitchell v. State,579 So.2d 45 (Ala.Cr.App. 1991), citing Ex parte Branch,526 So.2d 609, 624 (Ala.Cr.App. 1987).
The prosecutor gave the following reasons for striking prospective jurors: he struck juror number 131 because he had been prosecuted by the district attorney and his brother was recently convicted of rape and was currently in prison. The prosecutor struck number 43 because he had a relative that the district attorney's office had prosecuted, was unemployed, and the prosecutor felt that he could not understand the testimony concerning DNA testing which was a significant part of the case. (The prosecutor stated that he struck white jurors for the same reason *Page 550 
regarding the DNA testimony.) Juror number 7 was struck because her brother had been prosecuted twice. Number 47 was struck because he was related to a family in which the district attorney had prosecuted approximately 50 people who were "kin" to him. Number 114 was struck because a number of her relatives had been prosecuted. Number 61 was struck because she had recently been arrested by the Talladega Police Department and the prosector stated that she had a mental disorder that he felt would make it difficult for her to understand the DNA testimony. Prospective juror 9 was struck because of three prior DUI convictions. Juror number 48 was struck because she had gotten into trouble with the police in Talladega and there was evidence that she did not like police officers, and some of her relatives had been prosecuted by the district attorney's office. Number 51 was struck because of her known association with an individual who is heavily involved in drugs. We believe that all of the reasons given were valid race-neutral reasons. See Bedford v. State, 548 So.2d 1097 (Ala.Cr.App. 1989) (unemployment is a valid race-neutral reason); Powell v. State,548 So.2d 590 (Ala.Cr.App. 1988) aff'd, 548 So.2d 605 (Ala. 1989); (family members charged with crimes, connection with criminal activity and dissatisfaction with police are valid race-neutral reason); Hyter v. State, 545 So.2d 194
(Ala.Cr.App. 1988) (DUI convictions valid reason); Ex parteLynn, 543 So.2d 709 (Ala. 1988, cert. denied, Lynn v. Alabama, ___ U.S. ___, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989); (fact that prospective juror has been prosecuted by the district attorney valid reason). See also Pollard v. State, 549 So.2d 593
(Ala.Cr.App. 1989); Jackson v. State, 549 So.2d 616
(Ala.Cr.App. 1989) (fact that prospective juror had several prior convictions is valid race-neutral reason); Warner v.State, [Ms. 3 Div. 945, February 23, 1990] (Ala.Cr.App. 1990); (physical or mental handicaps which may affect the case may be sufficient reason).
We note that the prosecutor made several references in his explanations indicating that he struck white jurors for the same reasons. "There is no evidence of either " 'disparate treatment' " or " 'disparate examination of members of the venire' " which would tend to indicate racial discrimination."Mitchell, 579 So.2d at 47. "In the instant case, the prosecutor had the burden of articulating clear, specific, and legitimate reasons for the strikes, which relate to the case, and which are nondiscriminatory." Williams v. State, 548 So.2d 501, 504
(Ala.Cr.App. 1988). We believe that the prosecution met its burden of articulating race-neutral reasons.
 II
The appellant next argues that the trial court erred in not granting his motion for mistrial because the prosecutor failed to provide him with the oral statements he had made to police officers. The state argues that since there was never a ruling on the motion for production, the appellant failed to preserve any issue challenging the failure of the state to produce any statements made by the appellant.
In the instant case, defense counsel filed a motion for production on July 20, 1989. This was seven months prior to the commencement of trial. The record contains no answer by the prosecution and no ruling by the trial court. As this court stated in Jackson v. State, 484 So.2d 1174 (Ala.Cr.App. 1985):
 "In a factually similar case, this court, per the Honorable Joseph J. Mullins, Retired Circuit Judge, concluded that the trial court had not abused its discretion when, on the day of trial, it denied the defense counsel's motion to produce and suppress. Wilson v. State, 395 So.2d 1116, 1118
(Ala.Cr.App. 1981). In reaching this conclusion, the court stated the following:
 " 'The motion to produce, and the motion to suppress were filed with the clerk of the Circuit Court on May 15, 1979, and a copy of each sent to the District and Assistant District Attorney for Chambers County. The motions were not called to the attention of the trial court, nor was an order setting them down for a hearing requested *Page 551 
by counsel for the appellant until after the case was called for trial on May 29, 1980. Among the reasons for pre-trial motions to produce, or to suppress, are to avoid delay and undue interruption during the trial. They should be disposed of before the trial date. We hold that the trial court did not abuse its discretion when it denied appellant's written motions to produce and suppress. [Citations omitted.]' Id. (Emphasis added)."
484 So.2d at 1179. See also Donahoo v. State, 552 So.2d 887
(Ala.Cr.App. 1989). This court went on further to say inJackson, that " 'review on appeal is limited to matters on which rulings are invoked at the trial level.' "484 So.2d at 1180.
We are mindful of the fact that "Ordinarily, judges order that the defense attorney be given a copy of the defendant's statement, or district attorneys give it without being ordered to do so, as a matter of fundamental fairness, or with the expectation that such would eventually be deemed essential to due process." Peal v. State, 491 So.2d 991, 994 (Ala.Cr.App. 1985). However, there was no ruling on the motion in the instant case.
Furthermore, we believe that the appellant suffered no prejudice, for several reasons. Initially we note that the appellant made several statements to several different law enforcement officials. During the suppression hearing, which was held to suppress any items discovered illegally and to suppress any statements made by the appellant, defense counsel was given a copy of one statement made by the appellant to police officers. A second statement was testified to later during the suppression hearing. We further note that both statements were offered for purposes of establishing probable cause to arrest the appellant. Neither statement was ever read in the presence of the jury, and indeed no testimony was admitted before the jury concerning these statements. When Officer Robertson testified as to the contents of the second statement during the motion to suppress, the prosecutor stated that he did not know of the existence of this statement. The prosecution also stated, "Just strike out his testimony, Your Honor, if that's what you wish."
The appellant relies on the case of Peal v. State,491 So.2d 991 (Ala.Cr.App. 1985), for his argument that the prosecutor's conduct was so prejudicial that he was denied a fair trial. We find the Peal case readily distinguishable from the instant case. In Peal, the prosecution and defense counsel had an agreement as to the discovery. "In reliance on such agreement, the defendant's attorney did not insist upon being heard on his motion for discovery." Peal, 491 So.2d at 994. We have no such agreement in the instant case and we have no motion for the trial court to rule on the order. As this court further stated in Peal, "It is unfair to induce opposing counsel to forgo a hearing and ruling on a motion to produce by entering into an agreement to produce and then to breach that agreement." Peal,491 So.2d at 1001.
The record is clear that appellant's counsel knew that the appellant had made several statements to the police. Mention is made of such statements in the motion to suppress filed prior to trial. Even had this issue been preserved, the appellant's substantial rights were not "injuriously affected." See Rule 45 A.R.App.P.
 III
The appellant next argues that the prosecution failed to establish a prima facie case of murder. We do not agree. We believe there was sufficient evidence to present the case to the jury for its determination.
The state's evidence showed that the body of a black female was found in the middle of the road at approximately 4:55 p.m. on December 30, 1989. Approximately one hour later, a black man was seen beside a burning car. The car was identified as belonging to the appellant. The appellant's sister-in-law testified at trial that she saw the car on fire and went to the appellant's home to tell him about it. She stated that he had what appeared to be blood on his hands and arms and that she saw clothes which appeared to be bloodstained *Page 552 
in the house. The car which had been burned was searched. Blood was present on several areas of the car. Next to one of the doors of the car, a rag was found which also contained blood. These objects were analyzed, using DNA matching. The blood found on the rag and on the bumper of the car matched the blood from the victim.
Police officers testified that they went to the appellant's house after they were told who owned the car which was on fire. They went inside and the appellant was in bed. The appellant was taken to the police station for questioning. One officer who was present when the appellant was brought in said that the appellant appeared anxious to get to the rest-room to wash his hands. The officer stated that the appellant had what appeared to be blood on his arms but that when he came from the restroom, it was no longer there. A police officer testified that the appellant's mother told police that when she visited her son in prison he told her that, "he did it." The appellant's mother further stated to police officers that her son told her that he had shot the victim accidentally and then panicked and shot her a second time. The appellant's mother stated on the stand that he had told her he had done something but he didn't tell her what it was.
As Judge Bowen stated in Cumbo v. State, 368 So.2d 871
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979):
 "In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F.2d 130 (5th Cir. 1971); Clark v. United States, 293 F.2d 445 (5th Cir. 1961).
 " '[W]e must keep in mind that the test to be applied is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis but that of guilt; but rather whether the jury might so conclude. Harper v. United States, 405 F.2d 185 (5th Cir. 1969); Roberts v. United States, 416 F.2d 1216 (5th Cir. 1969)."
. . .
 "Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court."
368 So.2d at 874-875. "Circumstantial evidence that points to the guilt of the accused is entitled to the same weight as direct evidence." Knight v. State, 548 So.2d 647, 650
(Ala.Cr.App. 1989). "A conviction will not be set aside on the basis of sufficiency unless, 'allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust.' " Knight,548 So.2d at 650.
We believe that the jury had sufficient evidence before it to find the appellant guilty of murder.
 IV
Last, the appellant argues that his trial counsel was ineffective because he failed to call witnesses to challenge whether the DNA testimony met the standard in Frye v. UnitedStates, 293 F. 1013 (D.C. Cir. 1923), and because he advised him not to testify in his own behalf. In order to show ineffectiveness of counsel, the appellant must show that his counsel's conduct was deficient and that as a result of the deficiency, he was prejudiced. See Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
The record reflects that the appellant's counsel objected to the testimony of the DNA matching and strenuously cross-examined the individuals who testified concerning the DNA matching. We believe that counsel's performance in this regard was not deficient. We have recently held that DNA testing is reliable. See Perry v. *Page 553 State, [Ms. 8 Div. 301, March 16, 1990] (Ala.Cr.App. 1990). As to appellant's other claim, the record shows the following:
 "The Court: Mr. Gaston, your lawyer has told me that you are not going to take the witness stand. Is that correct?
"Mr. Gaston: Yes, sir.
 "The Court: And you make that decision after having talked to your lawyers back in the privacy of the side room over here and it is also your own desire not to testify. Is that correct?
"Mr. Gaston: Yes, sir.
 "The Court: You understand that you do have a right to testify if you want to?
"Mr. Gaston: Yes, sir.
 "The Court: If you tell me that you want to testify regardless of what your lawyers say, I'll be glad to let you testify. Do you understand that?
"Mr. Gaston: Yes, sir.
"The Court: And you still do not want to testify?
"Mr. Gaston: No, sir."
Several moments later the following occurred:
 "The Court: I believe that you again have talked to Mr. Gaston about his right to testify here today, Mr. Adcock?
"Mr. Adcock: Yes, sir.
 "The Court: And also his desire not to testify in this case?
"Mr. Adcock: Yes, sir.
 "The Court: Is it like it was the last time I talked to you, Mr. Gaston?
"Mr. Gaston: Yes, sir.
 "The Court: You understand you still have a right to testify.
"Mr. Gaston: Yes sir."
The record does not support appellant's claim. The appellant also argues that he wanted to testify so that he could state that the woman was killed in self-defense. This argument is not supported by the evidence in the case. The appellant has failed to satisfy the Strickland test. Thus, the appellant has failed to show that his trial counsel was ineffective.
AFFIRMED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).