COVINGTON, Judge.
The Louisiana Association of Educators, the St. Tammany Parish Association of Educators, several classroom teachers and a registered voter appeal a judgment of the district court which denied them the relief they sought and dismissed their suit against the St. Tammany Parish School Board.
The plaintiffs had sued to obtain declaratory and injunctive relief to require the School Board to allocate 83.8 percent of the proceeds derived from the 1966 sales tax for the payment of supplemental salaries to classroom teachers and specialists, to reimburse the sales tax fund for all expenditures allegedly used for a purpose other than for such supplemental salaries, and to establish a salary schedule for classroom teachers which would be competitive with neighboring parishes.
In a companion suit, the St. Tammany Federation of Teachers and several classroom teachers sued the School Board, its individual members, and its superintendent, seeking similar relief. A class action was also filed against the School Board, its members and superintendent for certain back salaries for the teachers.
*1146 The suits were consolidated for trial, with the proceedings in the class action held in abeyance pending the outcome of the actions for declaratory and injunctive relief.[1]
The trial court denied plaintiffs in both suits the relief they requested, and dismissed their suits. The court below found that the School Board was not obligated to use 83.8 percent (or any other specific percentage) of the special sales tax proceeds for classroom teachers’ salaries. The court also held that the only obligations of the School Board with respect to the use of such tax proceeds were: First, to establish a teacher salary schedule (the amounts being solely within the Board’s discretion); second, to fund the schedule with proceeds from the sales tax; and third, to use the remainder of the proceeds for any other legal purpose at the discretion of the Board.
In April 1965, the School Board was requested to call a sales tax election to supplement salaries of classroom teachers. The St. Tammany Parish Police Jury joined with the School Board in presenting to the voters a proposition providing for a sales tax, with the proceeds to be equally divided between the Police Jury and the School Board.[2]
The proposition was voted down; however the School Board, teachers, and interested citizens decided to try again to get voter approval of such a sales tax. On May 10, 1966, the School Board proceeded with plans for another sales tax election. The election was called for June 25, 1966.
The proposition submitted to the electorate on June 25, 1966, read as follows:
PROPOSITION
Shall the Parish School Board of the Parish of St. Tammany, State of Louisiana, under the provisions of R.S. 33:2737, and other constitutional and statutory authority supplemental thereto, be authorized to levy and collect, and adopt an ordinance providing for such levy and collection, a tax on one per cent (1%) upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the Parish of St. Tammany, all as presently defined in R.S. 47:301 through 47:317, with the proceeds of said tax (after paying reasonable and necessary costs and expenses of collecting and administering the tax) to be used first to supplement other revenues available to the School Board for the payment of salaries of teachers in the public elementary and secondary schools of the Parish in accordance with the St. Tammany Parish School Board salary schedule; next for the payment of salaries of lunchroom personnel, custodial and janitorial workers and bus drivers employed by the School Board; with any remaining revenues to be used for the expenses of operating said schools?
The school board members in favor of the tax, together with teachers and other school employees as well as interested citizens, engaged in an active campaign to have the sales tax passed. An advertising firm was employed to assist in the promotion of the tax. These efforts were successful, and on June 25, 1966, the sales tax passed.
*1147 On June 29, 1966, the School Board met, canvassed the returns, and enacted the necessary ordinance to effect imposition and collection of the tax. It was ordered that all sales tax proceeds received by the School Board treasurer be deposited into a special fund designated as “St. Tammany Parish School Board Sales Tax Fund.” The ordinance further provided that after payment of commissions to dealers and costs of collection, all funds remaining in the sales tax fund were to be available for appropriation and expenditure by the Board for the purposes set out in the proposition.
The tax was authorized and imposed pursuant to LSA-R.S. 33:2737.[3]
This statute authorizes the imposition of a sales tax for any of the following purposes: salaries of teachers, expenses of operating schools, or salaries of teachers and expenses of operating schools. It is clear that the School Board could have specifically designated a percentage of the tax proceeds to go to any or all of these categories. In other words, the proposition could have called for 83.8% or any other percentage to go specifically toward supplementing teacher salaries. But it did not do so; the proposition passed by the electorate was not that definite.
The appellants look to the circumstances surrounding the passage of the sales tax to provide a legislative history for assistance in interpreting the adopted proposition. At one point, the School Board was in agreement with the recommendation of the teachers’ associations that 80.4 percent of the funds generated be allocated to teachers’ salaries. This percentage was not placed in the proposition submitted to the electorate.
The campaign conducted in support of the tax included meetings, one-on-one confrontations, pamphlets, and newspaper advertisements. The Superintendent of *1148 Schools and all but one of the School Board members, acting in their individual capacity, were quite active in the campaign for passage of the tax.
Of interest is the document entitled “AN IMPORTANT MESSAGE TO THE VOTERS OF ST. TAMMANY PARISH.” In this document the President of the School Board stated “The money derived from this sales tax increase will be used to raise the salary schedules of teachers, bus operators, janitorial staff, lunchroom personnel, and to employ six additional school secretaries.” The document further indicated that the amount of $646,968.93 was the net anticipated revenue which would go to teachers’ salaries. Another “fact sheet” paid for by certain Board members also indicated that out of every $100.00 collected, $83.80 would go to classroom teachers. However, these promotional assertions must be considered in light of the revenue anticipated from the sales tax. The brochures referred to the then salary schedule (which would require 83.8 percent of funds generated), and made no mention of future salary schedules, or increased tax revenues.
Based upon this evidence, which the trial court admitted solely for the purposes of considering the intent of the person making the assertion and to show what type of information was made available to the electorate, the court below concluded that in the context of time and circumstances under which the advertising brochures were circulated and in view of the anticipated funds to be derived from the tax, the advertisements were not to be considered as a promise or commitment made by the School Board to allocate a definite 83.8 percent of all future tax receipts to teachers salaries. We agree.
This lawsuit is primarily based upon the contention, in the consolidated suits, that the St. Tammany Parish School Board has failed to use the proceeds of the one percent sales tax in the manner represented to the voters, stated on the ballot, and required by the ordinance. The summary of collections and expenditures relating to the 1966 sales tax shows that the gross collections for the year 1966-67 amounted to the sum of $551,-063.01. Except for 1968-69, the gross receipts have shown an annual increase, and receipts of $5,354,268.25 were received in fiscal 1980-81. Although gross dollars allocated to classroom teachers’ salaries increased substantially since 1966, there was a percentage decrease in the amount received by classroom teachers (when compared with' gross receipts throughout the life of the sales tax).
The Board argues that the sales tax proposition imposed no obligation on it to establish teachers’ salary schedules at a definite percentage amount, or at a rate competitive with those of neighboring parishes, or to use the tax funds exclusively for the purpose of paying teachers’ salaries. It contends that the phrase in the proposition “with any remaining revenues to be used for the expenses of operating said schools” enabled it to use the funds derived from the sales tax at its discretion, for general fund line items. The Board denies that it is required to dedicate 83.8 percent of the revenue collected from the tax to teachers’ salaries. It asserts that, pursuant to LSA-R.S. 17:81, it is the sole authority for establishing teachers’ salaries.
LSA-R.S. 17:81 provides in part:
Each parish school board shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The boards shall have authority to employ teachers by the month or by the year, and to fix their salaries; provided that there shall be no discrimination as to sex in the fixing thereof and provided further, that it is not the purpose of this Section to require or direct the reduction of any salary or salary schedule, presently in force. The boards shall see that the provisions of the state school laws are complied with ....
*1149 The Board thus has the statutory authority to determine the number of teachers to be employed, to select and hire such teachers, and to fix their salaries. See Louisiana Teachers’ Association v. Orleans Parish School Board, 303 So.2d 564 (La.App. 4th Cir.1974), writ denied, 305 So.2d 541 (La. 1975). There has been no showing of an abuse of this authority.
We believe that the proposition and the ordinance should be interpreted to mean that the Board, when considering disbursement of the proceeds, first shall establish a teachers’ salary schedule to be funded from the tax receipts; then consider payment of salaries of lunchroom personnel, custodial and janitorial workers and bus drivers; and finally, consider using any remaining funds for operating expenses. Neither the proposition nor the ordinance provides for a percentage allocation for teachers’ salaries.
On this question, the trial judge stated in his Written Reasons for Judgment:
It is the opinion of this Court that the proposition that passed on June 25, 1966, can be simply interpreted to mean that when considering the disbursement of the funds, the Board must first establish a teacher salary schedule, and fund it from tax receipts; then the School Board may consider salaries of lunchroom personnel, etcetera; and finally consider usage of the funds for expenses of operating the schools. The evidence indicates that this is exactly what the School Board has done. Each year additional funds have been allocated for teachers’ salaries. If the School Board had favored a percentage allocation for teachers’ salaries, such a provision should have been in the proposition. If the teachers expected a percentage of the sales tax revenues to be allocated to teachers’ salaries, they should have insisted upon such a provision in the proposition.
Again, the language of the proposition is clear. The School Board must first establish a teacher salary schedule, and then make tax receipts available to fund the schedule. These two steps must be taken before the Board can next move to considering and funding salaries of lunchroom workers, janitors, and bus drivers. The above-mentioned steps must be taken by the Board before using sales tax receipts for other operating expenses.
Throughout the years of sales tax collection and disbursement, the School Board, acting in its official capacity, never specifically allocated 83.8 percent of the tax receipts to teachers’ salaries. The Board never interpreted the sales tax proposition and ordinance as requiring such a specific dedication of the funds to teachers’ salaries. The St. Tammany Parish School Board, since the imposition and collection of the sales tax (more than 14 years ago) has given its own interpretation of the statute in such a fashion that shows a clear intent not to dedicate 83.8 percent or any specific percent of the proceeds to the payment of teachers’ salaries. Where a public body has over a long period of time placed an interpretation upon a legislative grant of authority, the interpretation of that body is entitled to a great weight. Ouachita Parish School Board v. Ouachita Parish Supervisors Association, 362 So.2d 1138 (La.App. 2nd Cir.1978).
In the Ouachita Parish case, the Court stated:
The doctrine of contemporaneous construction is a well recognized tool of statutory interpretation. It provides that when an administrative body has over a long period of time placed an interpretation upon a legislative enactment, the interpretation of said body is entitled to great weight in the determination of the meaning of the legislative enactment. Washington v. St. Charles Parish School Board, 288 So.2d 321 (La.1974). Id. at 1142.
From the long-standing interpretation given the ordinance, it can only be concluded that the Board reserved its discretion to allocate the sales tax revenues among the three interests set forth in the ordinance; it did not dedicate a specific percentage for teachers’ salaries.
*1150 The appellants also asked the lower court to establish the parameters of discretion within which the School Board was required to operate in the disbursement of the tax receipts. A court is not permitted to substitute its discretion for that of the school board. Courts should not interfere with a school board’s management of school affairs, unless there is a clear showing of abuse of the authority granted to the board. Earnest v. Caldwell Parish School Board, 368 So.2d 801 (La.App. 2nd Cir.1979); Shaw v. Caddo Parish School Board, 347 So.2d 39 (La.App. 2nd Cir.1977), writ denied, 350 So.2d 676 (La.1977).
In State ex rel. Rathe v. Jefferson Parish School Board, 206 La. 317, 19 So.2d 153, 167 (1943), the Supreme Court said:
There is nothing more firmly established in law than the principle that, within the limits of their authority, the power and discretion of legally created governing boards is supreme. Their wisdom or good judgment cannot be questioned by the courts. Members of these boards are appointed or elected because of their peculiar fitness for the post. Judges are elected because of their legal knowledge and ability. They are not experienced in the business affairs of Parishes and municipalities, * * * or the conduct of a public school system. A presumption of legality and regularity attaches to the action of all government boards. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable, or fraudulent that a court is justified in interfering.

... It is indisputable that the jurisprudence of this State is settled beyond doubt that where a statute creates a Board and grants to it certain administrative and executive functions and responsibilities, the courts will not interfere with the bona fide judgment of the Board based upon substantial evidence. It is only where the complaintant shows there has been an invasion of his rights by the Board exceeding its powers or doing him an injustice that the courts have set aside the actions of the Board * * *
We find no such showing in the instant case; and for the foregoing reasons, affirm the judgment dismissing the plaintiffs’ demands at appellants’ costs.
AFFIRMED.

. The class action is, therefore, not properly before us on appeal. Hence, the appeal docketed as 82 CA 0523 is remanded to the trial court.

. Shall the Parish School Board of the Parish of St. Tammany, State of Louisiana, under the provisions of R.S. 33:2737, and other constitutional and statutory authority supplemental thereto, be authorized to levy and collect, and adopt an ordinance providing for such levy and collection, a tax of one-half of one percent Qh %) upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the Parish of St. Tammany, all as presently defined in R.S. 47:301 through 47:317, with the proceeds of said tax (after paying reasonable and necessary costs and expenses of collection and administering the tax) to be used exclusively to supplement other revenues available to the School Board for the payment of salaries of teachers in the public elementary and secondary schools of the Parish and for the expenses of operating said schools, such operating expenses to include payment of salaries of other personnel employed by the School Board in addition to teachers?

. A. In order to provide additional funds for the payment of salaries of teachers employed in the public elementary and secondary schools of the respective parishes and cities of the state and/or for the operation of the public elementary and secondary schools of the parishes and cities of the state, any parish or city school board in the state is hereby authorized to levy and collect a sales tax not in excess of one per cent within the parish or city, as the case may be, as hereinafter set forth provided that where there are dual school boards in any parish, both must accept the imposition and means of collection and dispersion of the tax.
B. The sales tax so levied shall be imposed by an ordinance of the parish or city school board, as the case may be, and shall be levied upon the sale at retail, the use, the lease or rental, the consumption and storage for use or consumption of tangible personal property and on sales of services in the parish or city, as the case may be, all as presently defined in R.S. 47:301 through 47:317; provided, however, that the ordinance imposing said tax shall be adopted by the school board only after the question of the imposition of the tax shall have been submitted to the qualified electors of the parish or city at an election conducted in accordance with the general election laws of the state of Louisiana, and the majority of those voting in said election shall have voted in favor of the adoption of such ordinance. All costs of conducting the election required by this Section shall be borne by the parish or city school board calling the election.
C. This tax shall be in addition to all other taxes and shall be collected at the same time and in the same manner and pursuant to the definitions, practices and procedures set forth in R.S. 47:301 through 47:317.
D. The proceeds of the tax herein authorized shall be used exclusively to supplement other revenues available to the school board for the payment of salaries of teachers in the elementary and secondary schools of the parish or city, as the case may be, and/or for the expenses or operating said schools, and the ordinance imposing said tax and any amendments thereto shall state such purpose. None of the proceeds of this tax shall be used for capital improvements.
E. Nothing contained in this Section and particularly no provision of Sub-section D hereof shall be construed to affect the purposes for which the proceeds of any sales tax authorized or levied prior to December 11, 1964 shall be used, and in all such cases the disposition of the proceeds of sales taxes heretofore authorized or levied by a parish school board shall be made in accordance with the authorization under which such tax was levied and is being collected.
F. Provided that the funds raised by parishes and/or local school boards pursuant to the provisions of this act shall not be considered by the State Board of Education or the State Department of Education in the application of the state equalization formula or the distribution of proceeds of any other kind or nature by the State Board of Education and the State Department of Education.