The appellant, T.M. Donahoo, Jr., was convicted of trafficking in cannabis (marijuana), in violation of § 20-2-80,Code of Alabama 1975. He was sentenced to 20 years' imprisonment and was fined $25,000. This appeal arises out of appellant's second conviction for trafficking in marijuana. Appellant's initial conviction was set aside and a new trial was granted because of "improper jury communication." Donahoov. State, 505 So.2d 1067 (Ala.Cr.App. 1986). Twelve issues are raised on appeal.
The evidence presented by the State tended to establish that on June 27, 1985, Talladega County law enforcement authorities spotted, by means of aerial surveillance, a field of marijuana growing approximately one-half mile from County Road 58. Officers ascertained that the property on which the marijuana was growing was owned by the mother of the appellant, whose land adjoined his. Appellant's residence was located over one-half mile from *Page 889 
the marijuana field and on the opposite side of County Road 58. The marijuana field contained over 2000 plants, all of which were subsequently cut down and confiscated by law enforcement officials. The plants were one and one-half to two months old and were valued at $500 to $600 each.
When the marijuana field was discovered by the authorities, the soil was moist and smooth, despite the fact that the weather has been extremely dry and the surrounding land was dry and dusty. Further investigation revealed that the marijuana field had an extensive sprinkler irrigation system, operated by means of an electric pump located in a nearby lake. This lake also was located on the property of appellant's mother. Electricity was supplied to the irrigation pump from an electric meter registered to the appellant. The electric meter showed little or no usage of electricity by the pump. However, there was no seal on this electric meter. The State's evidence established that if the seal had been broken or removed, it would have been possible to turn the meter over so that it ran backwards. Such an action would have resulted in the apparent consumption of little or no electricity.
The State's evidence further established that the equipment for the irrigation system, as well as peat pots and other supplies necessary for growing marijuana, had been purchased by the appellant.
Following the confiscation of the marijuana plants found in the irrigated field, authorities obtained a search warrant for appellant's barn. During the execution of this warrant, appellant told Talladega County Sheriff Jerry Studdard, "I know who turned my marijuana up, I mean ever whose marijuana that is over there." Later, appellant told the sheriff that he wanted his pump back.
With the exception of 40 plants, all of the marijuana taken from the field was destroyed by law enforcement officials. The remaining 40 plants were taken back to the sheriff's department. After these plants dried out, officials stripped the marijuana leaves from the mature plant stalks, placed the leaves in three large plastic bags, and transported the bags to the Alabama Department of Forensic Sciences for examination. Ron Hubbard of the Department of Forensic Sciences examined the dried leaves taken from the field and positively identified the leaves as marijuana. The total contents of the bags turned over to him weighed 16.8 pounds. The bags contained marijuana stems and leaves, but no stalks. Hubbard initially estimated that the marijuana leaves, exclusive of stems, weighed between 13 and 14 pounds. Additional testimony elicited from Hubbard established that in his expert opinion at least 95% of the 16.8 pounds of plant material given to him for analysis was marijuana. If 95% of the 16.8 pounds of plant material was marijuana, the total weight of the marijuana would then be 15.96 pounds.
 I
Appellant first contends that his motion for change of venue should have been granted because, he says, he could not receive a fair and impartial trial in Talladega County, Alabama, due to extensive pre-trial publicity.
The principles controlling this issue are set out in Ex parteGrayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985):
 "Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353
(Ala.Cr.App. 1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298
(Ala.Crim.App. 1978). As the Supreme Court explained in Irvin v. *Page 890 Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
 " 'To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. . . . '
 "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, [2035-2036,] 44 L.Ed.2d 589
(1975). Thus, '[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.' Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App. 1978)."
The appellant, in support of his motion for change of venue, submitted copies of numerous articles which had appeared in theTalladega Daily Home, the local newspaper. All of the articles mentioned the appellant or his case. In many of the articles, appellant's name and the facts of his case were mentioned merely as being on the forthcoming trial docket. Several of the articles, however, concerned appellant's case exclusively. One article concerning appellant's case was an editorial opinion. The appellant contends that the fact that his previous conviction was mentioned in many of the articles as being overturned on "a technical matter" or "a technicality" was so prejudicial as to entitle him to a change of venue.
While it is readily apparent that there was extensive pre-trial publicity concerning appellant's new trial, this fact alone does not necessarily mean that appellant could not receive a fair and impartial trial. Fike v. State,447 So.2d 850, 857 (Ala.Cr.App. 1983).
 "Newspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown. Beddow v. State, 39 Ala. App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958).
". . . .
 ". . . Generally newspaper articles which objectively report the commission of a crime, do not carry inflammatory headlines, and do not editorialize on the facts in a manner to inflame the community or create an atmosphere of prejudice are an insufficient basis on which to grant a motion for change of venue. Gray v. State, 56 Ala. App. 131,319 So.2d 750 (1975)."
Anderson v. State, 362 So.2d 1296, 12981300 (Ala.Cr.App. 1978).
We have reviewed the articles submitted by appellant. Despite the fact that some articles referred to appellant's previous conviction being reversed on a "technicality," all but one of the articles were objective and factual, and were merely articles which detailed the crime and the developments in appellant's case.
The editorial opinion, however, could be considered prejudicial because it contained "sensational, accusational or denunciatory statements" concerning the appellant. McLaren v.State, 353 So.2d 24, 31 (Ala.Cr.App.), cert. denied,353 So.2d 35 (Ala. 1977). The editorial, entitled "Trivia Clogs the Courts," was critical of a justice system which because of "[a] trivial technicality, one which seems, if anything, error without injury, sends [Donahoo's] case back for a new trial." The editorial concluded: "What has happened to common sense in the justice system? With all other charges proved, is such a triviality so important as to cost taxpayers a new trial?"
Although this article was inflammatory, this court cannot say that the publication of this one editorial opinion deemed the pre-trial publicity surrounding this case, as a whole, "inherently suspect." Of the 54 prospective jurors, over 40 had read or heard something about appellant's case. Individual voir dire, however, revealed that only four of the 54 prospective jurors indicated that they would not be able to return a fair and impartial verdict. These jurors were, of course removed from the jury venire. *Page 891 
"Considering the answers of each prospective juror on voir dire examination we believe that the jury was impartial and adhered to its sworn duty to base its verdict upon the evidence adduced and the law as expounded by the court's instruction."Anderson, supra, 362 So.2d at 1300. Therefore, the trial court correctly denied appellant's motion for a change of venue.
 II
Appellant next contends that the trial court erred in denying his challenge for cause as to prospective juror Jesse H. Simpson.
Section 12-16-150, Code of Alabama 1975, provides that a juror may be challenged for cause if he has a fixed opinion as to the guilt or innocence of the defendant which would bias his verdict. "A 'fixed opinion' which will bias a verdict is one that is a conviction or prejudgment, a strong or deep impression which closes the mind of a juror and combats the testimony and resists its force." Nobis v. State,401 So.2d 191, 197 (Ala.Cr.App.), cert. denied, 401 So.2d 204 (Ala. 1981). However, "[a] juror, even though having previously expressed an opinion regarding a defendant's guilt, is not disqualified if he states unqualifiedly that as a juror he can find a true verdict on the evidence alone." Kinder v. State,515 So.2d 55, 60-61 (Ala.Cr.App. 1986); Johnston v. State,497 So.2d 844, 849 (Ala.Cr.App. 1986). Moreover, as stated in Irvinv. Dowd, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642,6 L.Ed.2d 751 (1961):
 "It is not required, however, that the juror be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impressions or opinion and render a verdict based on the evidence presented in court. Spies v. Illinois, 123 U.S. 131[, 8 S.Ct. 22, 31 L.Ed. 80]; Holt v. United States, 218 U.S. 245[, 31 S.Ct. 2, 54 L.Ed. 1021]; Reynolds v. United States, supra [98 U.S. (8 Otto) 145, 25 L.Ed. 244]."
During individual voir dire of the prospective jurors, Juror Simpson indicated that he read the Talladega Daily Home
regularly, and had read articles concerning appellant's case. When questioned about his opinion as to appellant's guilt and whether he could lay aside any previous impressions concerning appellant's case, Juror Simpson's answers initially were somewhat equivocal — i.e., "I believe I could."
Appellant argues that, in light of the decision in Ex parteBeam, 512 So.2d 723 (Ala. 1987), this juror's responses indicated that he held strong and deep impressions which would close his mind against the testimony given at trial. We disagree. It is true that, just as in Beam, Juror Simpson's responses, "when taken out of context and standing alone, . . . appear to be expressions of equivocation." Id., 512 So.2d at 524. Beam requires, however, that a juror's responses be "viewed in full context and as a whole." Id. When Juror Simpson's responses are viewed in full context, it becomes readily apparent that he was fully able to lay aside any previous impressions and render a verdict based solely on the evidence presented at trial. His ability to do so is perhaps best illustrated by the following:
 "Q Mr. Simpson, I hate to keep asking questions and taking you back and forth like a ping pong ball, but let me ask you this. If you could answer the question yes or no, and if you can't tell us that you can't, but again could you put everything out of your mind that you've read or heard and render a fair and impartial decision based solely upon what comes to you from the witness stand under oath, the exhibits that are allowed into law by *Page 892 
the Judge, and the Judge's charges as to the law. Could you render a decision based upon those things and those things only?
"A Yes.
"Q Thank you very much.
 "THE COURT: You may step down and go to the other courtroom please, sir."
A trial court's decision to disqualify a prospective juror based on a challenge grounded on bias is entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion. Thomas v. State, 539 So.2d 375,388 (Ala.Cr.App.), aff'd, 539 So.2d 399 (Ala. 1988), cert.denied, ___ U.S. ___, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989). Based on the foregoing, we conclude that no such abuse occurred in the instant case.
 III
Issues III and IV in appellant's brief concern the sufficiency of the State's case against him. Specifically, appellant contends that the State failed to make out a prima facie case regarding his knowledge of the marijuana growing on property that was not within his exclusive control, and that the State's evidence failed to exclude every reasonable hypothesis other than that of his guilt.
On review of this appellant's first conviction, this Court found the State presented sufficient proof of appellant's knowledge of the marijuana growing on his mother's property. The evidence presented by the State at the appellant's second trial was substantially identical to that presented at his first trial. Therefore, our prior finding of sufficiency is applicable to this case based upon our review of the evidence presented at the trial now on review.
 "Proof of knowledge by the accused of the presence of the controlled substance is an essential element to conviction for the offense of trafficking. Ala. Code (1975), § 20-2-80; Calhoun v. State, 460 So.2d 268, 270 (Ala.Cr.App. 1984). See also Walker v. State, 356 So.2d 672 (Ala. 1977). Section 20-2-80(1) states, in pertinent part, that '[a]ny person . . . who is knowingly in actual or constructive possession of, in excess of one kilo or 2.2 pounds of cannabis is guilty of a felony, which felony shall be known as "trafficking in cannabis."' Guilty knowledge is invariably proved by circumstantial evidence. Calhoun v. State, supra, at 270; Temple v. State, 366 So.2d 740, 741
(Ala.Cr.App. 1978). See also Walker v. State, 356 So.2d 674, 675 (Ala.Cr.App. 1977), cert. denied, 356 So.2d 677 (Ala. 1978). It may be proved by evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the contraband at the place where it was found. Temple v. State, supra, at 741, Walker v. State, supra, at 676.
 "An inference of constructive possession arises when the controlled substance is found on premises owned or controlled by the accused. Williams v. State, 340 So.2d 1144, 1145 (Ala.Cr.App. 1976), cert. denied, 430 So.2d 1149 (Ala. 1977). Possession is shown by three attributes: (1) actual or potential control; (2) intention to exercise dominion; and (3) external manifestations of intent and control. Radke v. State, 52 Ala. App. 397, 398, 293 So.2d 312, 313 (1973), affirmed, 292 Ala. 290, 293 So.2d 314 (1974). Although the evidence in the present case established that the defendant's mother owned the property on which the contraband was found, it also proved convincingly that the defendant controlled the property where the marijuana was growing.
 "The following evidence presented by the State established the defendant's actual control over the property where the marijuana was found, and thereby his constructive possession of the controlled substance:
 "(1) When the marijuana patch was discovered by Talladega authorities, the soil was wet, soft, and smooth. The roads leading across other portions of the property were dry and dusty and there had been no recent rainfall. The plot was equipped with a sprinkler system. Examination of the irrigation system revealed that three sprinkler heads *Page 893 
standing in concrete-filled bases were attached to a three-inch underground PVC pipe fed by a 7 1/2 horsepower Berkley water pump, serial number 1144790, erected in a nearby lake. The lake, also located on the defendant's mother's property, was approximately one-half mile from the marijuana field. The water pump was operated by an electric switch, and was connected to an electric service meter.
 "(2) During the month of October 1984, the defendant rented a ditch digging machine for one day, and purchased 2000 feet of three-inch PVC water pipe, as well as pipe couplings, pipe joints, glue, and cleaner.
 "(3) In May of 1985, the defendant purchased 800 peat cups, 1000 pounds of potting soil, and 160 pounds of concrete-gravel mix from local farm supply and building materials companies. During April and May of 1985, he made a total of ten long-distance telephone calls to Russell Daniel Irrigation Company in Athens, Georgia. On May 22, 1985, he bought a 71/2 horsepower Berkley water pump, serial number 1144790, as well as an electric starter, ball valves, and various pipe fittings, from Russell Daniel Irrigation Company. He also received from that company a diagram illustrating the operation of a three-head sprinkler irrigation system.
 "(4) Another field, over which the defendant exercised undisputed control and from which the marijuana patch was visible, had been 'disked' within a month to a month and one-half prior to June 27, 1985.
 "(5) Talladega Sheriff Jerry Studdard testified that, during the execution of the search warrant the defendant 'said he knowed who turned his marijuana up — I mean I know who turned up ever whose marijuana that was. And, can't you make them take the stand and tell who turned it up. I [the Sheriff] said, "T.M. you need to get you a lawyer is what you need." He said, "I don't need no damn lawyer, I ain't done nothing."'
 "Based on the foregoing, it is clear that the State presented sufficient circumstantial evidence from which it could be fairly inferred that the defendant knew of the existence of the growing marijuana in the place where it was found. Temple v. State, supra."
Donahoo v. State, supra, 505 So.2d at 1070-71.
Appellant further contends that the evidence adduced at trial, most of which was circumstantial, was insufficient to support his conviction for trafficking in marijuana.
We would first note that the mere fact that evidence is of a circumstantial nature does not make it deficient; circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused. Linzy v. State, 455 So.2d 260, 262 (Ala.Cr.App. 1984). The test of the sufficiency of circumstantial evidence is not whether the possibility exists that someone other than the accused committed the crime, but whether the evidence excluded every reasonable hypothesis but that of the accused's guilt.Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert.denied, 368 So.2d 877 (Ala. 1979). Viewing the State's evidence presented to the jury, which is set out above, under the principles enunciated in Cumbo, supra, we find that, when viewed in the light most favorable to the prosecution, it was sufficient to allow the jury to reasonably find that the evidence excluded every reasonable hypothesis except that of the appellant's guilt.
 IV
Appellant next contends that the evidence presented by the State was insufficient to convict him of trafficking in marijuana. Specifically, appellant argues that the State failed to prove that he was in possession of more than 2.2 pounds of marijuana, as is required by § 20-2-80, Code of Alabama 1975.
There is no argument that the plant-like material in the three bags which constituted State's exhibits 31, 32, and 33 weighed 16.8 pounds. Rather, appellant argues that the State failed to prove that the 16.8 *Page 894 
pounds of plant-like material contained more than 2.2 pounds of marijuana.
Marijuana is defined by § 20-2-2(15), Code of Alabama 1975, as follows:
 "(15) Marihuana. All parts of the plant Cannabis sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of the plant and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. Such term does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."
Ron Hubbard, a forensic laboratory analyst and drug chemist with the Alabama Department of Forensic Sciences in Jacksonville, Alabama, testified that he analyzed three bags of plant-like material. He initially stated that the total weight of these bags (State's exhibits 31, 32, and 33) was 16.8 pounds and that each of the samples taken from the bags contained the presence of marijuana. Hubbard was further questioned concerning the amount of marijuana to be found in the 16.8 pounds of plant-like material. He responded that, in his expert opinion, at least 95%, or 15.96 pounds, of the 16.8 pounds of plant-like material was marijuana. Hubbard further testified that he observed no stalks in the plant-like material. He did, however, observe some stems. In his opinion, the weight of the marijuana, exclusive of the marijuana stems, was between 13 and 14 pounds.
Appellant relies primarily on the cases of Ex parte Bohannon, [Ms. 87-59, July 29, 1988] (Ala. 1988), and Mulhern v. State,494 So.2d 787 (Ala.Cr.App. 1986), as support for his position. However, those two cases are readily distinguishable from this case.
In Ex parte Bohannon, the toxicologist testified that the total weight of the material was 3.5 pounds. He also stated that the material contained a significant amount of seeds. These seeds were not tested to determine if they fit within the definition of marijuana, nor were they weighed separately. Further, the defense attorney attempted to elicit an estimation of the percentage of seeds. However, the toxicologist could not give an estimation. The Alabama Supreme Court in Bohannon
stated that "because the seeds were weighed with the plant material, and because it is possible that the seeds were artificially sterilized and thus not within the definition of the term 'marijuana,' the state failed to meet its burden of proving that the defendant possessed in excess of 2.2 pounds of marijuana." Id., at 10.
However, as Judge Patterson stated in the recent case ofDay v. State, 539 So.2d 410, 413 (Ala.Cr.App. 1988):
 "In Mulhern, the defendant's conviction for trafficking was reversed because the state's evidence, establishing the weight of the marijuana possessed, consisted of a lab report which revealed only the weight of the plant material and did not provide the actual weight of the marijuana contained in the plant material. However, in the instant case, the evidence clearly established, as noted above, that the only thing contained in the bags was marijuana, as that term is defined in § 20-2-2(15). And unlike in Mulhern, Odom's testimony in the case at bar was that the bags contained marijuana, not that the material within the bags contained marijuana. In Mulhern, the lab report indicated the presence of marijuana in the material, while, in the instant case, Odom's testimony established that all of the material in the bags was, in fact, marijuana."
In this case, only growing marijuana plants were seized. The live marijuana plants were seized, and the leaves were stripped from the mature marijuana plant stalks. Only the marijuana leaves, and no seeds or stalks, were submitted for testing. The drug chemist who analyzed the material submitted to the Department of Forensic Sciences testified that in his expert opinion, *Page 895 
at least 95%, or 15.96 pounds, of the 16.8 pounds of plant-like material submitted for testing was marijuana. Although the 15.96 pounds of marijuana contained stems, these stems were not the mature stalks excluded by statute from the definition of marijuana. See Day v. State, supra, 539 So.2d at 412. Even so, the evidence established by the State was that the weight of the marijuana, exclusive of stems, was between 13 and 14 pounds. Thus, sufficient evidence was presented by the State to meet its burden of proving that appellant possessed in excess of 2.2 pounds of marijuana. Pursuant to Dickerson v. State,414 So.2d 998 (Ala.Cr.App. 1982), the burden then shifted to appellant to prove that some portion of the total weight was excluded by the statute.
We find, therefore, that the matter was correctly presented to the jury for its determination. In a conviction for trafficking in marijuana, the State need only prove that the defendant possessed in excess of 2.2 pounds of marijuana; it need not prove that all of the material seized was marijuana. Based on the evidence presented, the jury concluded that appellant possessed in excess of 2.2 pounds of marijuana and thus, was guilty of trafficking in marijuana. We see no reason to disturb that verdict.
 V
The appellant further contends that the trial court erred in overruling his motion for new trial on the grounds that the State failed to produce exculpatory material involving the prior conviction of Talladega County Deputy Sheriff Lester Nickolson.
Our examination of the record reveals that appellant's discovery motions were filed on May 1, 1987. An answer to these motions was filed by the State on May 6, 1987. However, appellant obtained no ruling on his discovery motions from the trial court. Thus, this issue is being raised for the first time on appeal. We, therefore, find our decision in Jackson v.State, 484 So.2d 1174 (Ala.Cr.App. 1985), to be controlling. InJackson, we wrote as follows:
 "Although a document styled 'motion for discovery' was filed on January 19, 1983, the appellant did not obtain a ruling on this motion from the trial court. As this court has repeatedly and consistently stated, 'review on appeal is limited to matters on which rulings are invoked at the trial level.' Robinson v. State, 441 So.2d 1045, 1048 (Ala.Cr.App. 1983). See also: Moore v. State, 457 So.2d 981, 988 (Ala.Cr.App. 1984), cert. denied, Moore v. Alabama, [470] U.S. [1053], 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985)."
Id., 484 So.2d at 1179-80.
Even if this issue had been preserved for our review, appellant's contention must still fail. To prove a violation of the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), the appellant must establish: (1) the prosecution's suppression of evidence; (2) the favorable character of the suppressed evidence for the defense; and (3) the materiality of the suppressed evidence. Ex parte Kennedy,472 So.2d 1106, 1110 (Ala.), cert. denied, 474 U.S. 975,106 S.Ct. 340, 88 L.Ed.2d 325 (1985).
At the hearing on appellant's motion for new trial, it was established that, in 1966, former deputy Lester Nickolson had pleaded guilty to violating 18 U.S.C. § 876 by mailing a threatening communication. He was sentenced to three years' unsupervised probation. Nickolson stated that he did not realize that he had been convicted of a felony and had voted and had otherwise conducted himself as an unconvicted person ever since the conviction. Moreover, several routine computer searches relating to Nickolson had failed to reveal this conviction. Upon learning of Nickolson's prior felony conviction, Sheriff Studdard fired him.
Based on these facts, we find the element of "suppression" missing from appellant's proof. The term suppression "means non-disclosure of evidence that the prosecutor, and not the defense attorney, knew to be in existence." Ogden v. Wolff,522 F.2d 816, 820 (8th Cir. 1975), cert. denied, 427 U.S. 911,96 S.Ct. 3198, 49 L.Ed.2d 1203 (1976). "The concept of 'suppression' implies *Page 896 
that the Government has information in its possession of which the defendant lacks knowledge and which the defendant would benefit from knowing." United States v. Natale, 526 F.2d 1160,1170 (2d Cir. 1975), cert. denied, 425 U.S. 950, 96 S.Ct. 1724,48 L.Ed.2d 193 (1976). Here, it is obvious that the State had no knowledge of Nickolson's prior felony conviction. Indeed, once it became known that Nicholson was a convicted felon, he was fired from his job. Neither is this the kind of information which may be imputed to a prosecutor. Thus, our decision inPatton v. State, 530 So.2d 886 (Ala.Cr.App. 1988), has no bearing on the instant case.
Moreover, we do not find this evidence to be material, in the sense that such evidence would tend to create a reasonable doubt where none existed before. United States v. Bagley,473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); United Statesv. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Here, just as in Agurs, the evidence in question was a prior criminal record. Unlike the instant case, however, the prosecutor in Agurs knew of the prior record. As in the instant case, the prior record in Agurs was admissible and would have been offered by defense counsel if it had been known. Unlike the instant case, where Nickolson's prior criminal conviction would have been mere collateral impeachment evidence, the evidence in Agurs would have related directly to the defense raised by the accused. The United States Supreme Court rejected Agur's claim on finding that the suppressed evidence was not material in the constitutional sense, since it would not have created a reasonable doubt in light of all of the remaining evidence. 427 U.S. at 112-13, 96 S.Ct. at 2401-02. The same is even more obviously true here. Nickolson's testimony was essentially cumulative and dealt with basically uncontested matters. Evidence tending to impeach him on totally collateral grounds — a conviction from the remote past — would not have created a reasonable doubt. Thus, the fact of his conviction was not material in the constitutional sense.
Appellant cites as authority for his position the recent decision in Ex parte Womack, 541 So.2d 47 (Ala. 1988). However, we find Womack to be factually distinguishable from the case at bar in that in Womack the prosecutor knew of and suppressed highly material evidence that someone other than the accused may have committed the crime for which the accused was charged. As previously stated, the prosecutor in the instant case suppressed no evidence. Moreover, the evidence here in question was not material in the constitutional sense. Accordingly, the trial court correctly denied appellant's motion for new trial.
 VI
Issues VII and VIII in appellant's brief concern the testimony of Carter Waldon, a narcotics agent with the Alabama Bureau of Investigation. Specifically, appellant argues that the trial court erred in allowing Agent Waldon to testify as to the age and value of the marijuana plants found in the field.
The question of whether the trial court erred in allowing Agent Waldon to testify as to the value of the marijuana plants has already been determined by this Court in Donahoo v. State,supra, 505 So.2d at 1071, wherein we held as follows:
 "The trial court did not err in overruling the defendant's objection to A.B.I. agent Carter D. Waldon's testimony that, in his opinion, each marijuana plant had a market value of $500 to $600. Ringer v. State, 489 So.2d 646 (Ala.Cr.App. 1986). Waldon testified that he had been a narcotics investigator for fifteen years, had seen marijuana growing at all stages of development several thousand times, and had purchased marijuana in Talladega County more than twenty times within the past year.
 " 'It is unnecessary for a witness to be an expert or a dealer in a particular article in order to testify as to that article's value if he has had the opportunity to form a correct opinion as to its value. Sales v. State, 435 So.2d 242 (Ala.Crim.App. 1983); Lankford v. *Page 897 State, 396 So.2d 1099 (Ala.Crim.App. 1981). Whether a witness has had an opportunity to form a correct opinion as to the value of an article is a question for the trial judge, [whose decision] will not be disturbed on appeal, absent an abuse of discretion. Daniel v. State, 439 So.2d 206 (Ala.Crim.App. 1983), Tice v. State, 386 So.2d 1180 (Ala.Crim.App.), writ denied, 386 So.2d 1187 (Ala. 1980).'
 "Ringer v. State, 489 So.2d at 653. We find no abuse of discretion here."
Neither was it error for the trial court to allow Agent Waldon to testify as to the age of the marijuana plants found. As we have previously held, an experienced police officer in the field of narcotics is qualified to give his opinion as one "who has seen or studied marijuana," pursuant to our decision in Jenkins v. State, 46 Ala. App. 719, 248 So.2d 758 (1971).Fleming v. State, 470 So.2d 1343, 1347 (Ala.Cr.App.), cert.denied, 474 U.S. 857, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985).
 VII
Appellant contends that the trial court erred in permitting Euel Brown to testify that the power meter removed from the appellant's pump could be caused to run backwards when, he says, there was no evidence to support any inference that the meter had been tampered with.
The determination of the admissibility of evidence rests within the sound discretion of the trial court. Ballard v.State, 461 So.2d 899, 906 (Ala.Cr.App. 1984).
 "Where the proffered evidence has a tendency, even though slight, to enlighten the jury as to the culpability of the defendant, then it is relevant and properly admissible. Barnes v. State, 31 Ala. App. 187, 14 So.2d 242, cert. denied, 244 Ala. 597, 14 So.2d 246 (1943). A fact having a logical relation or a causal connection with another fact, which makes the other fact either more or less probable, is competent or relevant to prove it. Ward v. State, 52 Ala. App. 392, 293 So.2d 307
(1974)."
Waters v. State, 357 So.2d 368, 371 (Ala.Cr.App.), cert.denied, 357 So.2d 373 (Ala. 1978).
Proof of knowledge by the accused of the presence of the controlled substance is an essential element of a conviction for the offense of trafficking in a controlled substance.Calhoun v. State, 460 So.2d 268, 270 (Ala.Cr.App. 1984). This guilty knowledge, or scienter, is almost always proved by circumstantial evidence. Id. Here, the State's evidence established that the marijuana crop was watered by a sprinkler system, which was supplied by an electric pump, which ran off an electric meter registered to the appellant. The State's evidence further established that this meter could be turned over and made to run backwards, thus falsifying the amount of power used.
Contrary to appellant's contentions, this evidence is significant because it tended to show that appellant actively cultivated the crop. If, however, the sprinkler system was never used, this evidence would be weakened. The electric meter attached to the pump would show the amount of usage of the sprinkler pump, unless the meter reading could be falsified. The testimony of Euel Brown indicated that such falsification was possible. A subsequent witness, Pauline Bowen, testified that the meter showed only 2 kilowatt hours used, compared with 202 kilowatt hours for the same period the year before. Ms. Bowen's testimony connected up the evidence relating to how the meter could have been falsified by relating that evidence to the case in several ways. First, the evidence of how the meter could have been falsified acted as a prophylactic for the weakening effect of the subsequent evidence of low usage of the sprinkler system. Second, when the evidence that the electric meter could have been falsified is combined with the evidence of remarkably low usage, the evidence of how dry the year 1985 had been, the evidence that the marijuana field had been watered, and the evidence that the only available source of irrigation was the sprinkler system, an inference is created that the appellant did falsify the meter. This inference would indicate an effort to cover up the *Page 898 
operation, and thus, would be strong evidence of scienter. Therefore, the trial court's ruling was correct, and no error occurred.
 VIII
Appellant next contends that the evidence seized from his barn and any statements which he made to Sheriff Studdard were due to be suppressed because, he says, the search of his barn was conducted in violation of the Fourth Amendment to the United States Constitution.
The search warrant was obtained by Talladega County Sheriff Jerry Studdard on June 27, 1985, from a district court judge in Talladega. The search warrant was issued solely upon the information contained in the affidavit. That affidavit states:
 "My name is Jerry Studdard. I am the Sheriff of Talladega County. On today's date, June 27, 1985, investigators from my department, Mike Martin and Mike McBurnett went up in an airplane to spot marijuana growing in Talladega County. At approximately 8:30 a.m. a field of marijuana was spotted by these investigators and they contacted me. They landed and identified the plants to be marijuana. The field was approximately 3/4 acre and was well cultivated and irrigated by an irrigation system and the irrigation system drew water from a pond on the Donahoo farm. The irrigation pipes were green in color and had noticeable tool marks on them. The plants ranged from 6 feet to 8 feet and approximately 2500 plants were seized by my investigators. Steel pipes, and electric fence posts were seized from the said field. The electric fence posts are approximately 36 inches long, yellow in color and round. The irrigation pump was electric and ran off of meter number 52 637 540 and I checked with Coosa Valley Co-Op and the said meter was designated to T.M. Donahoo as being on his pump on his farm in Alpine, Alabama. Also located in the field were white plastic containers containing liquid. I know of my own personal knowledge that T.M. Donahoo owns or operates approximately 2200 acres of farm land in Talladega County in the Alpine Community and where the pond which provided water to the field of marijuana is on the Donahoo farm. I also know that he has or owns a building used for storing farming equipment and/or machinery. Said building is located from the intersection of Talladega County Road 43 and Talladega County Road 58, known as the Plantersville Intersection. Go in a westerly direction 2.7 miles on County Road # 58 to a point which is also known as the Donahoo farm. Turn left off of County Road # 58 onto a dirt road and proceed on said dirt road past a mobile home. One of the said buildings is described as being a block and wood building with gray shingle roof and asbestos siding (the front part of the building is wood and the back side of the building is block). I have probable cause to believe that fertilizer, plastic jugs, wrenches and other instruments used to install an irrigation system, including, but not limited to, a torch and/or tools are stored in the said building. Based on the foregoing facts I respectfully request that a search warrant be issued for the above described premises and out buildings."
We find this affidavit to be sufficient under the totality of the circumstances standard for determining the existence of probable cause adopted by the United States Supreme Court inIllinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332,76 L.Ed.2d 527 (1983):
 "[W]e conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See Jones v. United States, supra [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697]; United States v. Ventresca, 380 U.S. 102[, 85 S.Ct. 741, 13 L.Ed.2d 684] (1965); Brinegar v. United States, 338 U.S. 160[, 69 S.Ct. 1302, 93 L.Ed. 1879] (1949). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in *Page 899 
the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. Jones v. United States, 362 U.S., at 271[, 80 S.Ct., at 736]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli."
See also Bishop v. State, 518 So.2d 829, 830-31 (Ala.Cr.App. 1987).
Appellant, however, contends that the judge's determination of probable cause was based on information in Sheriff Studdard's warrant which the sheriff "knew was false or should have known was false except for his reckless disregard of the truth." United States v. Leon, 468 U.S. 897, 923,104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). The lone statement challenged in Sheriff Studdard's affidavit is that he had "probable cause to believe that fertilizer, plastic jugs, wrenches and other instruments used to install an irrigation system, including, but not limited to, a torch and/or tools are stored in the said building." The evidence at trial established that the sheriff's statements about the contents of the appellant's barn were based on his having been in the barn several years earlier. However, the fact that appellant's barn contained tools and farm supplies used in the cultivation of, among other things, marijuana, was not likely to change over time, as these sorts of things would be commonly kept in barns. Moreover, even if this statement were excluded from the information, there would still remain sufficient information in the affidavit to support a finding of probable cause.Massachusetts v. Upton, 466 U.S. 727, 104 S.Ct. 2085,80 L.Ed.2d 721 (1984); Illinois v. Gates, supra, 462 U.S. at 236,103 S.Ct. at 2331. Therefore, the trial court was correct in its denial of appellant's motion to suppress.
 IX
Appellant also contends that the trial court erred in "admitting into evidence a videotape of the alleged crime scene that had been edited, was repetitive, and only served to inflame the minds of the jury." This issue was previously addressed by this Court in Donahoo v. State, supra, 505 So.2d at 1071-72, where we held:
 "A television news videotape of the marijuana field made by a photographer for WBTM-TV, Channel 13 in Birmingham, was admitted in evidence. The defendant objected on the grounds that the videotape was cumulative of the numerous still pictures of the scene, that it depicted an illegal demonstration (the operation of the sprinkler system), and that it had been edited.
 "Provided that a proper foundation is laid, the admissibility of videotape evidence in a criminal trial is a matter within the sound discretion of the trial judge. Annot., 60 A.L.R.3d 333 (1974). See Thompson v. State 462 So.2d 777, 779-80
(Ala.Cr.App. 1984). The State established the proper foundation here, and there is no question regarding the authenticity of the videotape. The fact that the tape was cumulative to other photographic evidence is not a basis for reversal. Photographic evidence is admissible even though it may be cumulative or demonstrative of undisputed facts. Hopkins v. State, 429 So.2d 1146, 1157
(Ala.Cr.App. 1983).
 "That the depiction of the sprinkler system in operation may have constituted a 'demonstration' was also not a basis for exclusion of the videotape. Reviewing the trial court's disallowance of a demonstrative film, the Kansas Supreme Court characterized a videotape as 'similar to a proffered demonstration or a request to view the scene of the crime' and concluded that the matter was addressed to the discretion of the trial court, to be reviewed only for abuse of discretion. State v. Costa, 228 Kan. 308, 613 P.2d 1359, 1368 (1980). In light of the fact that there was other testimony *Page 900 
regarding the sprinkler system, we do not find that the videotape's depiction of the system in operation 'materially prejudiced' the defense here, see Pease Co. v. Local Union 1787, 59 Ohio App.2d 238, 393 N.E.2d 504 (1978), or that the admission of the videotape constituted an abuse of discretion.
 "Finally, the fact that the tape was edited did not render it inadmissible, but only affected the weight that it would be given by the jury. State v. Woolridge, 2 Kan. App. 2d 449, 581 P.2d 403
(1978) (edited TV news videotape); Pease Co v. Local Union 1787, supra (same)."
Despite appellant's request, we see no reason to alter our position on this issue.
 X
Appellant's final contention of error is that "the 20-year sentence imposed in this case by the court is in excess of the maximum sentence authorized by law for the offense of trafficking in cannabis." This issue was also raised by appellant in his previous appeal. This Court, in determining the merits of his argument, held as follows:
 "The defendant argues that his twenty-year sentence is in excess of that authorized by law. He claims that under sections 13A-5-1(b) and 13A-5-4, as well as Motley v. State, 409 So.2d 945
(Ala.Cr.App. 1981), he should have been sentenced to no more than ten years, the maximum for a Class C felony under Title 13A.
 "Alternatively, he argues that by virtue of Maddox v. State, 502 So.2d 786 (Ala. 1986), the maximum sentence for trafficking in cannabis is fifteen years. He also claims that his sentence violates the Eighth Amendment proscription against cruel and unusual punishment as interpreted in Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
 " '[D]rug offenses fall outside the scope of Title 13A and provide for their own special penalties.' Dickerson v. State, 414 So.2d 998, 1005
(Ala.Cr.App. 1982). Sections 13A-5-1(b) and 13A-5-4
are applicable to drug offenses only 'for enhancement purposes under Alabama's Habitual Felony Offender Act.' Motley v. State, 409 So.2d 945, 947 (Ala.Cr.App. 1981).
 "In Ex parte Robinson, 474 So.2d 685 (Ala. 1985), the accused was convicted of trafficking in illegal drugs and sentenced to fifteen years. The Alabama Supreme Court directly addressed the issue of the maximum sentence allowed under § 20-2-80, and concluded that the statute was not unconstitutional for failing 'to fix the maximum penalty which may be imposed.' The court stated: 'While § 20-2-80 provides for only a minimum term of imprisonment, the statute may reasonably be construed to validly authorize a maximum sentence of life imprisonment.' 474 So.2d at 686.
 "In Ex parte Maddox, supra, the accused was convicted of trafficking in cannabis and also sentenced to fifteen years. We are unable to reconcile the specific holding of Robinson with the following statement, made with no citation of authority, in Ex parte Maddox, supra: 'Maddox received the maximum sentence allowed by law for his first felony conviction, while Gillum and Callahan [co-defendants] received a four-year sentence and a three-year sentence, respectively.' We can only conclude that the Supreme Court had in mind the maximum sentence allowed under § 20-2-70 ('upon conviction for the first offense [ordinary possession] may be imprisoned for not less than two nor more than 15 years') and did not intend to depart from the clear holding of Robinson, supra, that the statute is constitutional despite its failure to provide a maximum punishment. See Maddox v. State, 502 So.2d 790
(Ala.Cr.App. 1986) (on remand from Alabama Supreme Court).
 "Finally, the proportionality analysis of Solem v. Helm, supra, is not mandated here. See Maddox v. State, 502 So.2d 790 (Ala.Cr.App. 1986) (on remand), wherein this court determined that Solem v. Helm is inapplicable to sentences for trafficking under § 20-2-80 unless the sentence imposed is life without parole. *Page 901 
The defendant possessed over 2000 marijuana plants, weighing 16.8 pounds. Compare Beasley v. State, 408 So.2d 173 (Ala.Cr.App. 1981), cert. denied, Ex parte Beasley, 408 So.2d 180 (Ala. 1982) (accused, convicted of trafficking in cannabis, possessed 2.4 pounds, and was sentenced to twenty years and one day). The careful planning, investment of time, and expense which attended the defendant's cultivation and irrigation of the marijuana crop are indicators of the gravity of his offense, suggesting, as they do, his intent to reap the reward of his crop on a continuing basis. His sentence was not disproportionate to his crime and thus was within constitutional limits. Maddox v. State, supra."
Donahoo v. State, supra, 505 So.2d at 1073-74. We again see no need to alter our position on this issue.
Appellant received a fair trial. Therefore, for the above-stated reasons, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.